IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KELLY PINN, an individual, on her own behalf and on behalf of all others similarly situated, | § § § § | No. 24-2782 |
| Plaintiffs, | § § | |
| v. | § § | |
| CONSUMER CREDIT CARD RELIEF, LLC and CONSUMER CAPITAL ADVOCATES, LLC, Florida limited liability companies, | § § § § § | |
| Defendant. | | |

**CLASS ACTION COMPLAINT**

Plaintiff Kelly Pinn ("Pinn" or "Plaintiff") bring this class action complaint against Defendant Consumer Credit Card Relief, LLC ("CCCR") and Consumer Capital Advocates, LLC ("CCA," and together with CCCR hereinafter jointly referred to as "Defendants") to stop Defendants' practice of making unsolicited telemarketing calls to telephone numbers listed on the national Do-No-Call Registry, using false outgoing telephone numbers ("spoofed" telephone numbers), and to obtain redress for all persons injured by this conduct. Plaintiff, for her class action complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

**Nature of the Case**

1. Plaintiff, individually and as proposed class representative for all others similarly situated, brings this action against Defendants for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA") for unsolicited, "spoofed" telemarketing calls

made by or on behalf of Defendants which deceptively market Defendants' services.

2. Plaintiff, individually, and for class members (together, "Plaintiffs"), seeks an injunction and other equitable relief, and an award of statutory damages, and costs and reasonable attorneys' fees, to the members of the proposed classes.

## Parties

3. Plaintiff Kelly Pinn is a resident of Texas. She is the subscriber of a residential telephone listed on the national Do Not Call list consistent with, on which she received numerous unsolicited telephone calls from Defendants.

4. Defendant Consumer Credit Card Relief, LLC ("CCCR") is a Florida limited liability company, which lists its address with the Florida Secretary of State as 6300 NW 5th Way, Suite 100, Ft. Lauderdale, Florida 33309.

5. Defendant Consumer Capital Advocates, LLC ("CCA") is a Florida limited liability company, which lists its address with the Florida Secretary of State as 6300 NW 5th Way, Suite 100, Ft. Lauderdale, Florida 33309.

6. Together with CCCR and CCA, Jenssen Varela owns and operates at least five other businesses (which may include National PayDay Loan Relief, Paragon Marketing & Promotions, Inc., Help Finance Group, LLC, Naked Media LLC, Lightspeed Settlements, LLC, Consumer Awareness Weekly, LLC, and/or Paragon Financial Corporation) at the same address.

7. Plaintiff, individually, and for class members (together, "Plaintiffs"), seeks an injunction and other equitable relief, and an award of statutory damages, and costs and reasonable attorneys' fees, to the members of the proposed classes.

## Jurisdiction and Venue

8. The Court has federal subject matter jurisdiction under 47 U.S.C. § 227. *See Mims*

*v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012). The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because Plaintiff's claim for violation of the Texas law relates to the same telemarketing activity as her federal claims.

9. This Court has personal jurisdiction over the Defendants under Texas Civil Practice & Remedies Code § 17.042 because Defendants committed a tort in this state by directing their telemarketing to residents of Texas, including Plaintiff.

10. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendants reside in this District and because a substantial part of the events giving rise to the claim occurred in this District.

**The Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227**

11. "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls." *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2343 (2020).

12. In 1991, Congress enacted the TCPA, in response to a growing number of consumer complaints regarding certain telemarketing practices. Pub. L. No. 102-243, (Dec. 20, 1991), *codified at* 47 U.S.C. § 227. *See also Mims*, 565 U.S. at 371 ("The Act bans certain practices invasive of privacy").

13. The TCPA (via its implementing FCC regulations) prohibit calls to any number that is registered with the National Do-Not-Call Registry. *See* 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2). The TCPA provides a private right of action for damages and injunctive relief for such DNC violations. 47 U.S.C. § 227(c)(5).

14. The National Do-Not-Call Registry allows residential telephone subscribers to register their telephone numbers with the Registry to indicate their desire not to receive

telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2). A listing of the Registry "must be honored indefinitely or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

15. Defendants are liable under the TCPA. The FCC's regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397, ¶13 (1995). The FCC reiterated this principle in 2013, when it explained that "a seller . . . may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 (2013). "Vicarious liability under the TCPA is governed by the federal common law of agency." *Callier v. Wide Merch. Inv., Inc.*, 671 F. Supp. 3d 736, 743 (W.D. Tex. 2023). *Cf. id*. at 746 (describing TCPA liability for ratification, where defendant "knowingly accepted the benefits that flowed from the call campaign in the form of increased business"). *See also Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 168 (2016) ("no cause to question" precept that "under federal common-law principles of agency, there is vicarious liability for TCPA violations"); Restatement (Third) of Agency (2006) §§ 2.01, 2.03, 4.01 (vicarious liability "may be established by express authorization, implicit authorization, or ratification").

16. The TCPA reflects Congress's intent to preserve the social norms that Americans answer calls to their telephone numbers. Abusive and deceptive robocalls like those used by Defendants are a scourge on modern society, and represent an increasing threat to American's continued use of the telephone system, which relies on the custom that people generally answer telephone calls to their telephone number. The TCPA's legislative history recognized the

continued proliferation of telemarketing, left unchecked, would undermine that custom. "Unwanted calls are tainting the wanted ones and make us cringe at the thought of answering the telephone at night. . . .[I]t's a classic case of the bad apples spoiling the whole barrel." 137 Cong. Rec. H11,312 (daily ed. Nov. 26, 1991) (statement of Rep. Cooper); 137 Cong. Rec. H11,310 (daily ed. Nov. 26, 1991) (statement of Rep. Markey) (TCPA intended to protect privacy "before our home telephones become the receptacles of junk calls in the same way that junk mail often inundates our mailboxes"). The situation has greatly worsened since the TCPA was first passed. Unless the situation improves, Americans will permanently acclimate to the telephone call as a fundamentally untrustworthy medium for free speech and stop answering unidentified telephone calls, frustrating the legislative intent behind the TCPA.

### Defendants' Illegal Telemarketing Calls

17. Defendants use telemarketers to solicit business from potential consumers across the country, including in Texas, to purchase their credit services through aggressive, outbound telemarketing campaigns. Defendants use illegal telemarketing campaigns to promote their services.

18. These telemarketing campaigns are conducted for Defendants' benefit and on their behalf. Defendants and their telemarketers initiate telemarketing calls from offshore call centers to telephone numbers on the Do-Not-Call registry, assess the recipient's need and/or interest in Defendants' services, then transfer the recipients to an onshore call center operated by Defendants' actual agents, ostensible agents, conspirators, partners, alter egos, and/or joint venturers.

19. Defendants systemically fail to honor the national Do Not Call List. Defendants do not have express consent to call telephone users whose telephone number is on the Do Not

Call List.

20. Defendants also use misleading or inaccurate caller identification information, including "spoofed" telephone numbers, to entice recipients to answer their telephone calls. This spoofing means call recipients are only able to avoid Defendants' unwanted calls by risking that they miss wanted calls.

21. Nonetheless, Defendants made, and continues to make, these telemarketing calls to individuals nationwide without their consent. Defendants ratify the telemarketers' conduct by accepting payments from the consumers who enroll in Defendants' tax debt negotiation services at the end of the telemarketers' call, and by paying commission to these telemarketers, despite knowing that the calls resulting in the enrollment violated the TCPA. Defendants have knowingly and actively accepted money that originated through illegal telemarketing calls, and paid and/or approved payment of commissions to telemarketers for such calls.

22. The telemarketers Defendants used to make any telemarketing calls were and are at all relevant times, acting as actual agents, ostensible agents, conspirators, partners and/or joint venturers and employees of Defendants, and the acts alleged herein occurred within the course and scope of said agency, employment, partnership, joint venture, conspiracy or enterprise, and with the express and/or implied permission, knowledge, consent, authorization and ratification of Defendants.

23. Defendants operate, manage, monitor, and/or control these telemarketing campaigns through the data collected about the telemarketing campaigns, and the feedback Defendants give to the telemarketers (including, ultimately, the commissions Defendants pay to their telemarketers). Defendants are legally responsible for ensuring it and/or any third-party telemarketers complied with the TCPA, even if they themselves did not itself make the calls.

Defendants are vicariously liable for their agents' TCPA violations. Defendants not only controlled the result of the work, but also the manner and means by which it was accomplished through interim instructions. There is no material distinction between telemarketing calls made by Defendants and/or by call centers who are technically third parties.

### Plaintiff's Individual Allegations

24.     In January 2024, Pinn received the first in a series of calls where the speaker had a South Asian account, and claimed to be from or with "National Debt Relief." Pinn received these calls on January 10, January 12 at 11:16am and 2:57 pm, January 26, February 2 at 3:41 pm and 3:58 pm, February 27, April 3, June 7, July 5 at 10:31 am, 10:35 am, 10:46 am, 3:53 pm, and July 8, 2024.

25.     Prior to June 2024, Pinn told the caller she was not interested and instructed "National Debt Relief" to stop calling her. In June, seeing that "National Debt Relief" would not voluntarily comply with her directives began to cooperation with "National Debt Relief" and provided information, in order to identify the onshore seller using the telemarketers to call Pinn. On July 9, the telemarketers with "National Debt Relief" and/or Defendants transferred Pinn to Kwame, one of Defendants' representatives. Kwame sent two additional text messages to Pinn's number from his telephone number, 561-468-6758.

26.     On information and belief, Kwame is Defendants' customer service representative and actual agent, who "qualified" Pinn and other referrals from "National Debt Relief," determining whether Pinn would purchase CCCR and/or CCA's credit services.

27.     Kwame repeatedly misrepresented the name of his company as "DMB Financial," and cited reviews for DMB Financial as Defendants' own *bona fides*. However, he provided Pinn the email address kmoorer@consumercreditcardrelief.com for her to send documents hoim to

"qualify" for Defendants' services. The website at consumercreditcardrelief.com indicates CCCR operates the website to facilitate selling its credit services, and provides CCCR's (888) 407-8633 telephone number.

28.   On information and belief, Defendants ratified TCPA violations by "National Debt Relief" by accepting its referrals by continuing to pay it commissions while willfully ignoring evidence that it used telemarketing which violated the TCPA to develop those referrals.

29.   Pinn's telephone number has been registered with the National Do-Not-Call Registry for over ten years. Pinn uses this telephone number uses residential purposes. Pinn never provided her telephone number to Defendants or their agents for any purpose whatsoever as she never had a business relationship with them. Defendants and their agents did not otherwise obtain Pinn's prior express consent to make telemarketing calls to her telephone number. Pinn was not a business associate, customer, or other person having an established relationship with Defendants, Defendants did not call to collect an existing obligation, and Pinn did not request Defendants to call (and, indeed, she was not aware of the Defendants prior to these calls). Defendants never had valid consent to call Pinn. *See* 47 C.F.R. § 64.1200(c)(2)(ii) (requiring "a signed, written agreement between the consumer and seller which states that the consumer agrees to be contacted by this seller").

30.   Defendants' telemarketing inflicted actual injury on Pinn by invading her privacy. Defendants caused Pinn the harm inherent in unsolicited, harassing, and deceptive telemarketing calls (including emotional distress, aggravation, nuisance, loss of use of her telephone, wasted time, invasion of privacy, and diverting attention away from her daily activities).

### Class Action Allegations

31.   **DNC Class Definition:** Plaintiff brings this Complaint against Defendants,

pursuant to Federal Rule of Civil Procedure 23, on behalf of herself and the following Class (the "DNC Class"):

> All persons in the United States who received two or more telemarketing calls to their cellular or residential telephone numbers within any 12-month period by or on behalf of Defendants, from four years prior to the date of Plaintiff's original complaint through the date the Court certifies the class.

Excluded from the DNC Class are any entity in which Defendants have a controlling interest or which has a controlling interest in Defendants, and Defendants' owners, affiliates, agents, legal representatives, predecessors, successors, assigns, and employees. Also excluded are the judge and staff to whom this case is assigned, and any member of the judge's immediate family. Plaintiff reserves the right to revise and amend this class definition based on facts learned during discovery.

32. **Texas Class Definition:** Plaintiff also brings this Complaint against Defendants, pursuant to Federal Rule of Civil Procedure 23, on behalf of herself and the following Class (the "Texas Class"):

> All persons who received a telemarketing call by or on behalf of Defendants while the person were resided in Texas and while Defendants lacked a registration certificate for the business location from which such telephone call was made, from four years prior to the date of Plaintiff's original complaint through the date the Court certifies the class.

Excluded from the Texas Class are any entity in which Defendants have a controlling interest or which has a controlling interest in Defendants, and Defendants' owners, affiliates, agents, legal representatives, predecessors, successors, assigns, and employees. Also excluded are the judge and staff to whom this case is assigned, and any member of the judge's immediate family. Plaintiff reserves the right to revise and amend this class definition based on facts learned during discovery.

33. **Numerosity:** The exact number of DNC and Texas Class members is unknown

and is not available to Plaintiff at this time, but such information is readily ascertainable by Defendants and their agents' records. The DNC and Texas Classes are so numerous that joinder of all members is impractical. Plaintiff alleges that there are at least forty members of each Class.

34. **Commonality:** Plaintiffs and the DNC and Texas Classes members share common experiences receiving calls by or on behalf of DNC and Texas's clients, respectively. They received multiple, incessant, uninvited calls for the purposes of marketing the services of DNC and Texas clients to their residential telephone numbers.

35. **Predominance:** In addition, common questions of fact and law exist as to all Class members and predominate over the questions affecting only individual DNC and Texas Class members. Identification of the individuals who qualify as a member of the DNC and Texas Classes will be sufficient to establish liability to the class member. The predominant common questions include:

   a. Whether Defendants and/or their agents made telephone calls to members of the DNC Class whose telephone numbers were registered with the national Do-Not-Call registry, and/or instituted and maintained procedures and minimum standards prescribed by 47 C.F.R. § 64.1200(d) for making telemarketing calls;

   b. Whether Defendants are vicariously liable for any calls by their agents;

   c. Whether Defendants and/or their agents had legally effective consent to place telemarketing calls to Plaintiffs and Class members;

   d. Whether Defendants made telephone solicitations to Texas Class members while Defendants did not maintain a registration certificate for the business location from which the telephone solicitations were made consistent with Tex. Bus. & Com. Code § 302.101;

   e. Whether Plaintiffs and Class members are entitled to damages, including whether Defendants' violations were performed willfully or knowingly such that Plaintiffs and Class members are entitled to treble damages;

   f. Whether Plaintiffs and Class members are entitled to injunctive relief and attorneys' fees and costs.

36. **Typicality:** Plaintiff's claims are typical of the claims of the other Class members. Plaintiff is not different in any relevant way from any other Class members, and the relief they seek is common to the DNC and Texas Classes.

37. **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the other members of the Classes: Plaintiff's interests do not conflict with the interests of the other Class members. Plaintiff has retained counsel competent and experienced in complex class actions, including class actions arising under the TCPA and other consumer protection laws, and they intend to prosecute this action vigorously.

38. **Predominance and Superiority:** The DNC and Texas Classes alleged in this Complaint are appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. The damages suffered by each individual Class member will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. It would be virtually impossible for Class members to individually obtain effective relief from Defendants' misconduct. Even if Class members themselves could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, class actions present far fewer management difficulties and provide the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

39. **Generally Applicable Policies:** This class action is also appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to

the classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to each class a whole. The policies of the Defendants challenged herein apply and affect members of each class uniformly, and Plaintiffs' challenge of these policies hinges on Defendants' conduct, not on facts or law applicable only to Plaintiffs.

40. **Injunctive Relief is Appropriate:** Based on information and belief, Defendants continue to engage in the improper practices discussed above. Injunctive relief is necessary and appropriate to enjoin Defendants' conduct and to prevent irreparable harm to Plaintiffs and the DNC and Texas Class members for which they have no adequate remedy at law.

**FIRST CAUSE OF ACTION**
**(Violation of 47 U.S.C. § 227(c)(5) and/or 47 C.F.R. § 64.1200(c) Against All Defendants By Plaintiff, Individually, and on Behalf of the DNC Class)**

41. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

42. Defendants are "persons" as defined by 47 U.S.C. § 153(39).

43. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring an action for injunctive relief and statutory damages of $500 per violation. 47 U.S.C. § 227(c)(5). Where "the court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection," it "may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount [otherwise] available . . ." *Id.*

44. The FCC's TCPA regulation provides that "[n]o person or entity shall initiate any telephone solicitation" to a "residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive

telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2). This prohibition also applies to wireless telephone numbers. 47 C.F.R. § 64.1200(e).

45. On information and belief, Defendants and/or their agents routinely make outgoing calls to residential and cellular telephones in the regular course of their telemarketing campaigns alleged above. Defendants violated 47 C.F.R. § 64.1200(c) by initiating telephone solicitations to wireless and wireline residential telephone subscribers such as Plaintiff and the other DNC Class members.

46. Defendants' violations are willful because Defendants knew that Plaintiffs and DNC Class members had not given prior express consent to receive telemarketing calls made to telephone numbers placed on the Do Not Call List and that Defendants called such telephone numbers, or benefitted from calls on their behalf. Because Defendants' violations were willful, the Court should treble the amount of statutory damages recoverable by Plaintiff and the other Class members.

47. Plaintiff Kelly Pinn, on her own behalf, and on behalf of the other the DNC Class members, seeks to recover statutory damages (including treble damages for willful violation of the TCPA), as well as injunctive and equitable relief under 47 U.S.C. § 227(c)(5) against Defendants.

**SECOND CAUSE OF ACTION**
**(Violation of 47 U.S.C. § 227(c)(5) and/or 47 C.F.R. § 64.1200(d) Against All Defendants By Plaintiff, Individually, and on Behalf of the DNC Class)**

48. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

49. The FCC's TCPA regulation also provides that

> No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:
>
> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made [and] must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. . . .
>
> (4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

47 C.F.R. § 64.1200(d). Again, this prohibition also applies to wireless telephone numbers. 47 C.F.R. § 64.1200(e).

50. On information and belief, Defendants and/or their agents violated 47 C.F.R. § 64.1200(d)(4) by making telephone calls for telemarketing purposes which actively concealed the name of the individual caller, Defendants' name, and a telephone number or address at which Defendants could be contacted. Specifically, Defendants and/or their agents use deceptive and

misleading scripts (consistent with the individual allegations regarding Plaintiffs above) which fail to identify Defendants until after the telemarketer transfers the call.

51. Defendants' violations are willful because Defendants (1) knew (or deliberately and willfully avoided knowing) that the TCPA applied to their conduct, and (2) failed to institute or maintain procedures and minimum standards required under 47 C.F.R. § 64.1200(d) in the manner alleged above, but still engaged in telemarketing to DNC Class members. Because Defendants' violations were willful, the Court should treble the amount of statutory damages recoverable by the Plaintiffs and the DNC Class members.

52. Defendants either do not have a written policy for maintaining a do-not-call list, or do not provide it on demand. On information and belief, Defendants and/or their agents violated 47 C.F.R. § 64.1200(d)(1) and/or (2) by failing to maintain a written policy for maintaining a do-not-call list and/or informing and training all personnel engaged in any aspect of telemarketing in the existence and use of the do-not-call list. Defendants' violations are willful because, e.g., they knew such conduct violated the TCPA.

53. Plaintiff Kelly Pinn, on her own behalf, and on behalf of the other the DNC Class members, seeks to recover statutory damages (including treble damages for willful violation of the TCPA), as well as injunctive and equitable relief under 47 U.S.C. § 227(c)(5) against Defendants.

**THIRD CAUSE OF ACTION**
**(Violation of Tex. Bus. & Com. Code § 305.053 Against All Defendants By Plaintiff, Individually, and on Behalf of the Texas Class)**

54. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

55. As alleged in Counts One and Two, Pinn alleges Defendants' calls violated

various provisions of "47 U.S.C. Section 227" and "a regulation adopted under" 47 U.S.C. § 227. Tex. Bus. & Comm. Code § 305.053(a). These TCPA violations also permit Pinn and the Texas Class members to seek additional remedies under Texas state law. Tex. Bus. & Comm. Code § 305.053.

56. Texas law authorizes statutory damages of $500 for each violation, or $1,500 for each violation, if the "court finds that the defendant committed the violation knowingly or intentionally." Tex. Bus. & Comm. Code § 305.053(b), (c). As alleged in Counts One and Two, Defendants' violations are willful, and the Court should treble the amount of statutory damages recoverable by the Plaintiffs and the Texas Class members.

57. Plaintiff Kelly Pinn, on her own behalf, and on behalf of the other the Texas Class members, seeks to recover statutory damages (including treble damages for willful violations), as well as injunctive and equitable relief under Tex. Bus. & Comm. Code § 305.053(b), (c) against Defendants.

**FOURTH CAUSE OF ACTION**
**(Violation of Tex. Bus. & Com. Code § 305.053 Against All Defendants By Plaintiff, Individually, and on Behalf of the Texas Class)**

58. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

59. Defendants' credit services are an "item" under the Texas telephone solicitation law. *Cf.* Tex. Bus. & Com. Code § 302.001(1) ("'Item' means property or a service").

60. Pinn and the Texas Class members are "purchasers." *Cf.* Tex. Bus. & Com. Code § 302.001(3) (including "person who [] is offered an opportunity to [] receive an item").

61. The calls to Pinn and the Texas Class members alleged above in Counts One, Two, and Three are "telephone solicitations." Cf. Tex. Bus. & Com. Code § 302.001(7) ("a

telephone call a seller or salesperson initiates to induce a person to purchase [] or receive an item").

62. Defendants are "sellers" under the Texas telephone solicitation law. Cf. Tex. Bus. & Com. Code § 302.001(5) ("a person who makes a telephone solicitation").

63. The Texas telephone solicitation law requires sellers to register the offices from which telephone solicitations are made.

> A seller may not make a telephone solicitation from a location in this state or to a purchaser located in this state unless the seller holds a registration certificate for the business location from which the telephone solicitation is made.

Tex. Bus. & Com. Code § 302.101.

64. Defendants' violations of the Texas telephone solicitation law render them "subject to a civil penalty of not more than $5,000 for each violation," and liable for "all reasonable costs of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney's fees." Tex. Bus. & Com. Code § 302.302(a), (d).

65. Plaintiff Kelly Pinn, on her own behalf, and on behalf of the other the Texas Class members, seeks to recover civil penalties, as well as all reasonable costs under Tex. Bus. & Com. Code § 302.302(d) against Defendants.

**WHEREFORE,** Plaintiff Kelly Pinn prays that the Court enter judgment and orders in their favor and against Defendants Consumer Credit Card Relief, LLC and Consumer Capital Advocates, LLC as follows:

  a. An order certifying the DNC and Texas Classes, directing that this case proceed as a class action, and appointing Plaintiff and her counsel to represent the DNC and Texas Classes;

  b. Statutory damages as provided under 47 U.S.C. § 227(c)(5) against Defendants in favor of Plaintiffs and the DNC Class, including trebled

        damages for willful and knowing violations;

c.    Statutory damages as provided under Tex. Bus. & Comm. Code § 305.053(b), (c) against Defendants in favor of Plaintiffs and the Texas Class, including trebled damages for willful and knowing violations;

d.    Civil penalties as provided under Tex. Bus. & Com. Code § 302.302(a), (d)

e.    Injunctive relief under 47 U.S.C. § 227(b)(3), Tex. Bus. & Comm. Code § 305.053(a)(1), and Tex. Bus. & Com. Code § 302.301 against Defendants in favor of Plaintiff and the DNC and Texas Classes;

f.    An award of attorneys' fees and costs under California Code of Civil Procedure § 1021.5 in favor of Plaintiff and the DNC Class;

h.    All reasonable costs of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney's fees for the Texas Class;

i.    Such other and further relief as this Court may deem appropriate.

Dated: November 5, 2024        By:   s/Ethan Preston
                                              Ethan Preston (24091084)
                                              ep@eplaw.us
                                              PRESTON LAW OFFICES
                                              4054 McKinney Avenue, Suite 310
                                              Dallas, Texas 75204
                                              Telephone: (972) 564-8340
                                              Facsimile: (866) 509-1197

                                              *Attorneys for Plaintiff Kelly Pinn, on her own behalf, and behalf of all others similarly situated*

**JURY TRIAL DEMAND**

Plaintiffs hereby demand a trial by jury of all issues so triable.

Dated: November 5, 2024        By:   s/Ethan Preston
                                     Ethan Preston (24091084)
                                     ep@eplaw.us
                                     PRESTON LAW OFFICES
                                     4054 McKinney Avenue, Suite 310
                                     Dallas, Texas 75204
                                     Telephone: (972) 564-8340
                                     Facsimile: (866) 509-1197

                                     *Attorneys for Plaintiff Kelly Pinn, on her own behalf, and behalf of all others similarly situated*